Mrs. Nellie S. CARDNO, Plaintiff,

v.

Mr. Robert H. FINCH, Secretary of the Department of Health, Education, and Welfare—Social Security Administration, United States of America, Defendant.

Civ. A. No. 69–2002.

United States District Court,
E. D. Louisiana,
New Orleans Division.
March 10, 1970.

Lloyd C. Melancon, McLoughlin, Barranger, West, Provosty & Melancon, New Orleans, La., for plaintiff.

Charles H. White, Asst. U. S. Atty., New Orleans, La., for defendant.

## ON MOTION BY DEFENDANT TO DISMISS

CASSIBRY, District Judge:

This is an action by Mrs. Nellie Cardno to review a final decision of the Secretary of HEW denying her emergency hospital benefits under Part A of the Medicare Act (42 U.S.C.A. § 1395 et seq.). Mrs. Cardno was admitted to the Southern Baptist Hospital in New Orleans on July 9, 1968; on July 11, 1968 her right kidney was removed by surgery. She remained in the hospital until July 27, 1968. The Southern Baptist Hospital, at the time of Mrs. Cardno's operation, was a nonparticipating hospital in the Medicare Program. Consequently, the plaintiff may be reimbursed the cost of the hospital services rendered only if they were "emergency" services within the meaning of the statute. 42 U.S.C.A. § 1395f(d) (1).

The Bureau of Health Insurance determined that Mrs. Cardno was not entitled to emergency treatment benefits. The plaintiff appealed from this determination and a hearing examiner reversed the Bureau. The hearing examiner was in turn reversed by a decision of the Social Security Appeals Council, and plaintiff filed this action for judicial review of that decision. The Government now moves to dismiss the action for want of jurisdiction; for the reasons discussed below, the motion is denied.

There are two basic coverage provisions in Medicare. Part A, entitled "Hospital Insurance Benefits for the Aged," 42 U.S.C.A. § 1395c et seq., provides general protection for elderly persons against the cost of hospital services. Part B, "Supplementary Medical Insurance Benefits for the Aged," 42 U.S.C.A. § 1395j et seq., establishes a voluntary insurance program for a variety of non-hospital medical costs, such as, e. g., the ever-present doctor bill.

The two parts of the Act are administered differently. The question of whether a person is *entitled* to the benefits of the Act is determined by the Secretary of HEW in accordance with regulations prescribed by him. 42 U.S.C.A. § 1395ff(a). This is so whether the claim is made under Part A or Part B. *Id.*[1] However, when the question is not as to entitlement, but solely as to *amount* of benefits, determinations are made by the Secretary only under Part A. See note 1, *supra*. The Act provides that under Part B the Secretary shall enter into contracts with private insurance carriers " * * * [which] will perform some or all of the following functions * * * (1) (A) make determinations of the rates and amounts of payments required pursuant to this part to be made to providers of services and other persons on a reasonable cost or reasonable charge basis * * *." 42 U.S.C.A. § 1395u. It is the insurance companies which determine amount of benefits under Part B, not the Government. The Act requires the insurance companies to establish procedures for a fair hearing of disputed determinations. 42 U.S.C.A. § 1395u(b) (3) (C).

This description of the operation of the two parts of the Act, although necessarily cursory here, is basic to an understanding of the provision for judicial review, to which I now turn.

1. "§ 1395ff. Determinations; appeals
    (a) The determination of whether an individual is entitled to benefits under part A or part B, and the determination of the amount of benefits under part A, shall be made by the Secretary in accordance with regulations prescribed by him."

42 U.S.C.A. § 1395ff provides as follows:

"§ 1395ff. Determinations; appeals

(a) The determination of whether an individual is entitled to benefits under part A or part B, and the determination of the amount of benefits under part A, shall be made by the Secretary in accordance with regulations prescribed by him.

(b) Any individual dissatisfied with any determination under subsection (a) of this section as to entitlement under part A or part B, or as to amount of benefits under part A where the matter in controversy is $100 or more, shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title, and, in the case of a determination as to entitlement or as to amount of benefits where the amount in controversy is $1,000 or more, to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title."

Although the Act itself is silent on the point, the Senate Report declares that "the remedies provided by these review procedures shall be exclusive." S.Rep. No. 404, 89th Cong., 1st Sess., 55 (1965) (U.S. Code Cong. and Admin. News, p. 1995). It is therefore safe to assume that this Court has no power to review Mrs. Cardno's claim save as it can be found in words of § 1395ff, *supra*. The Government asserts, without plausible contradiction by plaintiff's counsel, that the most Mrs. Cardno can hope to recover is $676.16, see note 5, *infra*, and therefore § 1395ff precludes review of her claim in this Court because there is lacking the requisite "$1,000 in controversy." Kuenstler v. Occidental Life Insurance Company, 292 F.Supp. 532 (C.D.Cal. 1968) is cited as authority. *Kuenstler*, however, holds only that determinations of *amount* of benefits under *Part B*— which, as previously indicated, are made by private insurance companies and not the Government—are not subject to review at all, either by HEW or by the courts, no matter what the amount in controversy. This view finds clear support in the legislative history.[2] Nellie Cardno, on the other hand, is claiming under *Part A*. Further, she is not disputing a determination of *what amount* of benefits she is entitled to, but rather a determination that she is not entitled to any benefits. The language of § 1395ff, in both subsections (a) and (b), makes a clear distinction between determinations of "entitlement" and determinations of "amount" of benefits. This type of distinction is a very familiar one in the law—analogous, e. g., to that between determinations of liability and damages in tort cases—and is decisive of the present case.

The first part of § 1395ff(b), which deals with the right to a hearing before the Secretary, reads as follows:

"Any individual dissatisfied with any determination under subsection (a) of this section [see note 1, *supra*] as to entitlement under part A or part B, *or* as to *amount* of benefits under part A *where the matter in controversy is $100 or more,* shall be entitled to a hearing thereon by the Secretary * * *." (Emphasis added).

The comma after the words "part B" indicates that the "$100 in controversy" requirement applies only to controversies concerning *amount* of benefits.

The next part of § 1395ff(b), which deals with judicial review, parallels both the language and structure of the first part; however the comma which would have corresponded with that in the first part is missing:

" * * * and, in the case of a determination as to entitlement *or* as to *amount* of benefits *where the amount in controversy is $1,000 or more,* [the claimant shall be entitled] to judicial review of the Secretary's final decision." (Emphasis added).

---

2. S.Rep.No.404, 89th Cong., 1st Sess., 55 (1965) (U.S.Code Cong. and Admin.News, p. 1995.)

■ When viewed in isolation the second part of § 1395ff(b) seems to imply, in contrast to the first part, that the "$1,000 in controversy" requirement applies to review of questions of entitlement as well as to those of amount. It would be an exercise in what Mr. Justice Holmes referred to as "mechanical jurisprudence," however, to attempt to determine the meaning of any part of a statute as though it were an isolated statement. Every sentence in a statute colors the meaning of every other sentence, and each sentence—indeed each word—must be read as part of the whole. Thus, in the case at hand, the very parallelism between the language and syntax of the two parts of § 1395ff(b) belies any clear intention of Congress to give the second part a decisively different meaning than the first. For one thing the second part, like the first, marks out "entitlement" and "amount" as distinct categories. Why did Congress distinguish between "entitlement" and "amount" at all in the second part? Why did it not simply say *determinations* by the Secretary under subsection (a)? (There are, of course, only two types of determinations by the Secretary under subsection (a); determinations as to entitlement, and determinations as to amount). It is also significant that in both parts of § 1395ff(b) the "entitlement" and "amount" clauses are separated by the disjunctive "or" rather than the conjunctive "and." Finally, if in the second part of § 1395ff(b) Congress intended the jurisdictional amount requirement to apply to review of *all* determinations, it is difficult to understand why it did not place the requirement at the very beginning or end of the part rather than at the identical loca-

tion at which it appears in the first part—immediately following the phrase "[determinations] as to amount of benefits." In short, if Congress intended a sharp distinction in meaning between the two sections of the statute it certainly did very little to make that intention plain.[2a] It is hard to believe that the mere omission of a comma was intended to work such an important difference. The legislative history confirms this view. For it makes clear that Congress intended the amount in controversy requirement to apply only to judicial review of determinations as to amount of benefits. Determinations as to *entitlement* to benefits are subject to judicial review no matter what the amount in controversy may be.

"(6) Appeals

The committee's bill provides for the Secretary to make determinations, under both the hospital insurance plan and the supplementary plan, as to whether individuals are *entitled* to hospital insurance benefits or supplementary medical insurance benefits and for hearings by the Secretary and judicial review where an individual is dissatisfied with the Secretary's determination. Hearings and judicial review are also provided for where an individual is dissatisfied with a determination as to the *amount* of benefits under the hospital insurance plan *if the amount in controversy is $1,000 or more.* (Under the supplementary plan, carriers, not the Secretary, would review beneficiary complaints regarding the amount of benefits, and the bill does not provide for judicial review of a determination concerning the amount of benefits under part B where claims will probably be for substantial-

---

**2a.** 42 U.S.C.A. § 1395ff(b) provides for judicial review "as is provided in section 405(g) of this title." Section 405(g) provides that

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, *irrespective of the amount in controversy,* may obtain a review of such decision by a civil action * * * in the district

court of the United States * * *." (Emphasis added)

There is thus a general Congressional policy providing for judicial review of the Secretary's determinations under legislation for the benefit of the elderly. It would be a disservice to Congress to carve an exception to that policy in the absence of a clear indication that the exception was intended.

ly smaller amounts than under part A.) Hospitals, extended care facilities, and home health agencies would be entitled to hearing and judicial review if they are dissatisfied with the Secretary's determination regarding their eligibility to participate in the program. It is intended that the remedies provided by these review procedures shall be exclusive."

S.Rep. No. 404, 89th Cong., 1st Sess., 55 (1965) (U.S. Code Cong. and Admin. News, p. 1995) (Emphasis added).

This distinction is not without sense since the issue of entitlement is necessarily more basic than the issue of amount of benefits. Further, it is unlikely that the decision in this case will greatly affect the volume of litigation in the federal courts. Entitlement in most cases is a mechanical and routine matter under Medicare; the basic thrust of the Act is to provide as broad coverage as possible for elderly people. Litigation in this area seems unlikely to arise except in a few borderline cases, such as in the present case, e. g., where the particular hospital involved was nonparticipating,[3]

or perhaps in cases where individuals encounter serious difficulties in proving their age. Determinations of amount of benefits, on the other hand, seem more likely to generate disputes, and are, as pointed out, in general less vital to the individual than entitlement itself; therefore Congress has limited our review to only the larger of these cases.

Mrs. Cardno is not seeking judicial review of the amount of benefits she should receive.[4] The sole question presented is whether she is entitled to the benefit of the Act. Therefore 42 U.S.C.A. § 1395ff(b) grants this Court jurisdiction to decide her appeal.

At the hearing of this case on February 18, 1970 the parties argued only the jurisdictional issue. The merits of this case remain to be decided. Each party is hereby granted the opportunity to present oral argument on the merits by filing an appropriate motion with the Clerk within ten (10) days from the date of this judgment.[5]

The defendant's motion to dismiss is denied.

---

3. It is interesting to note that Southern Baptist Hospital has come under Medicare since Mrs. Cardno's operation.

4. Indeed, the "Notice of Hearing" Mrs. Cardno received from HEW stated that "The general issues to be determined are whether you are *entitled* to health insurance benefits for your hospitalization at Southern Baptist Hospital from July 9 through July 27, 1968." (Emphasis added). The Notice also has a provision informing the claimant what *specific* issues will be decided; this provision appears just below the general issue provision in the Notice, and it is filled-in "same as above." Thus the administrative record itself indicates that "entitlement" is a distinct issue.

5. Mrs. Cardno's counsel contended that there was $1,000 in controversy in this case since the hospital bill was $1,001.20 (Cardno Exhibit "D"). The Government argued that there was less than $1,000 in controversy, since under 42 U.S.C.A. § 1395f(d) (3) Mrs. Cardno was not entitled to recover the full amount of her bill but only 60 percent of routine charges and 80 percent of

ancillary charges. Under the Government's calculations the most Mrs. Cardno could hope to recover was $676.16. Plaintiff's counsel did not attempt to contradict any of these assertions; his sole argument was that the amount in controversy requirement should be measured by the claimant's bill regardless of other considerations. This seems untenable. If plaintiff's counsel had offered a plausible contradiction to the Government's assertions, and it had at least appeared there was a chance the plaintiff might recover $1,000 or more, there might well have been $1,000 "in controversy" even though ultimately the plaintiff might have recovered less. See, e. g., Bell v. Preferred Life Assurance Society, 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15 (1943); Wright, Federal Courts, 93–95.

Plaintiff's counsel also contended that the jurisdictional amount requirement denied the small claimant equal protection of law and due process of law. Since I have held that the jurisdictional amount requirement does not apply to Mrs. Cardno's case, I need not reach these constitutional issues.