Emma **BOHLEN**

v.

Elliot **L. RICHARDSON**, Secretary of Health, Education and Welfare.

Civ. A. No. 70-2559.

United States District Court, E. D. Pennsylvania.

June 19, 1972.

The Medicare Act should be construed liberally. Social Security Act, § 1831 as amended 42 U.S.C.A. § 1395j.

Roland J. Artigues, Galfand, Berger, Senesky & Lurie, Philadelphia, Pa., for plaintiff.

Carl J. Melone, U. S. Atty., Malcolm L. Lazin, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION

EDWARD R. BECKER, District Judge.

Under the provisions of part B of Medicare,[1] the right of a senior citizen who has been denied benefits for medical services to obtain administrative and subsequent judicial review of that decision turns upon whether the determination which results in the denial of benefits relates to the claimant's *entitlement* to those benefits (in which case there is a right of review), or merely to the *amount* of the benefits (in which case there is not). We have reviewed the Medicare statute and its legislative history as well as the nascent caselaw in the field. However, none of these sources establishes the demarcation point between what constitutes a question of entitlement and a question of amount. Since that determination is the touchstone of this case, we must distill from the legislative history and the statute sufficient guidelines to enable us to make it.

The case involves plaintiff's claim for reimbursement for sums which she expended for certain dental services. The dental services involved the grinding and realignment of teeth in order to permit the proper healing of fractures and to insure proper bite and eating function. Plaintiff's reimbursement claim was denied on the grounds that these services were excluded from part B coverage because they were essentially routine or normal dental care. This lawsuit is bottomed on the contention that the services were not properly excluded because of the following attendant circumstances: (1) the services were the necessary sequelae of treatment for the fractures which had been traumatically induced and surgically reduced; (2) the surgery itself (performed in a hospital) was covered by Medicare parts A and B; and (3) the claim would have been allowed, under the applicable regulations, had the services been performed by the dentist who reduced the fracture.

The decision to exclude the services was made by Pennsylvania Blue Shield ("Carrier"), acting as agent for the Department of Health, Education and Welfare ("HEW"). Plaintiff thereupon sought a hearing in the nature of an appeal from the Carrier's determination, but the Social Security Administration refused to afford a hearing to her. As indicated above, this complaint followed. We must therefore decide whether the issue drawn by the denial of plaintiff's claim for reimbursement for these dental services raises a question of entitle-

---

1. 42 U.S.C. § 1395j et seq.

ment to benefits, which would afford her administrative and judicial review, or a question of amount, which would not.

The case is presently before us on cross motions for summary judgment and on the Secretary's motion to dismiss. While plaintiff's complaint challenges the constitutionality of the Medicare part B statutory scheme on a number of bases,[2] because we find that plaintiff's claim raises a question of entitlement, we need not, and do not, reach the constitutional issues. Explication of the grounds of our decision (see *infra*) first necessitates a discussion of the statutory scheme and, of course, the facts of record.

## I.

The Medicare Act was promulgated in 1965 to provide a hospital insurance program for the aged under the Social Security Act with a supplementary health benefits program and an expanded *program for medical assistance*. The health insurance and medical care provisions of the Act contain two principal parts. Part A (42 U.S.C. §§ 1395c–1395i) provides the senior citizen with reimbursement of his claims for inpatient hospital services, post-hospital services, post-hospital extended care services, post-hospital home health services, and outpatient hospital diagnostic services. Part B (42 U.S.C. § 1395j et seq.), the voluntary supplementary insurance plan, insures the elderly for the cost of physicians' services, chiropractic and podiatrists' services, home health services, and numerous other medical and health services in and out of medical institutions, as set forth in 42 U.S.C. § 1395k.

Part B (in § 1395k) provides for benefits for "medical and other health services." Section 1395x(s) states that "medical and other health services" includes, *inter alia*, physicians' services, which is defined in § 1395x(q) to mean "professional services performed by physicians. . . ." Section 1395x(r) defines "physician." In pertinent part, it provides:

"The term 'physician,' when used in connection with the performance of any function or action, means . . . ·(2) a doctor of dentistry or of dental or oral surgery who is legally authorized to practice dentistry in the State in which he performs such function but only with respect to (A) surgery related to the jaw or any structure contiguous to the jaw or (B) the reduction of any fracture of the jaw or any facial bone. . . ."

Moreover, § 1395y(a) (12) operates as a further limitation of the coverage under part B by excluding "any expenses incurred for items or services (12) where such expenses are for services in connection with the care, treatment, filling, removal, or replacement of teeth or structures directly supporting teeth," notwithstanding any other provisions of parts A or B.

In order to provide for the administration of the benefits with maximum efficiency and convenience, and with a view to furthering coordination of the administration of parts A and B, Congress has authorized the Secretary to enter into contracts with carriers, such as Pennsylvania Blue Cross—Blue Shield, to perform functions such as: (1) making determinations of the rates and amounts of payments; (2) receiving, disbursing, and accounting for funds; (3) auditing of records of pro-

**2.** *Inter alia*, plaintiff alleges that: (1) the statutory scheme, which delegates to a non-governmental agency (the Carrier) the power to administer the Medicare provisions, is violative of due process and is an unlawful delegation of legislative powers; (2) the statutory scheme, if it denies the plaintiff her right to administrative and judicial review, is violative of due process and of the equal protection of the laws; and (3) the administrative determination that certain dental work would be covered by part B of Medicare, if performed by the dentist who reduced the fracture, but not covered if performed by a different dentist, is irrational and violative of due process.

viders of services; (4) serving as a channel of communication of information relating to the administration of the Act, and (5) otherwise assisting in discharging administrative duties necessary to carry out the purposes of part B. 42 U.S.C. § 1395u(a). In addition, § 1395u(b) (3) (C) states that each contract shall provide that the *carrier* establish and maintain procedures for a fair hearing by the carrier when payments are denied. The *Secretary* has established such procedures,[3] which entitle the claimant, *inter alia*, to an initial determination by the carrier, an informal review of that determination by the carrier with the opportunity to present written evidence and contentions as to fact or law, and ultimately, a hearing before an impartial hearing officer appointed by the carrier with the opportunity to call witnesses, submit briefs, and present oral arguments.

## II.

In August 1968, the plaintiff, Emma Bohlen ("Mrs. Bohlen"), was injured in a motor vehicle accident. She sustained two dislocated hips, a fractured right hip, a laceration of the arm, a broken nose, and a fractured jaw. The maxilla (jaw) was separated from the cranium as the result of which her bite was so changed that her teeth did not meet. In addition, the left mandibular condyle was completely fractured away and had to be removed [letter of Martin Entine, D.D.S. to Carrier, April 25, 1969]. While she was in the hospital, her fractured jaw was reduced by an oral surgeon, the cost of which was paid for by Medicare pursuant to 42 U.S.C. §§ 1395k and x(q), (r) and (s). Subsequent to this surgery (in November 1968 and January 1969), Mrs. Bohlen engaged the services of Martin Entine, D.D.S. for follow-up dental work. Dr. Entine performed work in the nature of realigning and grinding her teeth in order that she would have the proper bite so as to per-

mit function and proper healing of the fractures and to allow Mrs. Bohlen to chew and eat properly [Fair Hearing Officer's Decision, Feb. 3, 1970].

In a letter to Mrs. Bohlen's attorney dated May 15, 1970, which is part of the record, Dr. Entine recited more specifically the nature of the work he performed on Mrs. Bohlen. He first stated that he had equilibrated the occlusion and cut down live teeth on the lower jaw to adjust the chewing mechanism so as to remove the constant irritation and jarring to the temporomandibular joint, which was being caused when the jaws closed improperly. The improper closing of the jaws was caused by the fracture and broken off condyle. Dr. Entine related that this surgical cutting of the teeth was a surgical necessity without which the temporomandibular joint may not have healed properly. In addition, the pain in chewing would be practically intolerable had the surgical trimming of the teeth not been done. Dr. Entine further stated that his work was an absolutely necessary post-operative treatment as a continuance of the fracture reduction and was necessary to prevent extreme temporomandibular joint pain and temporomandibular synovitis, muscle spasms and associated radiated pains. Finally, Dr. Entine set forth that his work was in no way related to dental work *per se*, but was related to the life mechanism of chewing and closing the jaws, all of which was made necessary solely by the accident.

On January 29, 1969, Mrs. Bohlen submitted a Request for Medicare Payment with an attached statement from Dr. Entine covering dental services in the amount of $148.00, to the Carrier. The Carrier, in its Initial Determination, rejected the claim on the ground that dental services involved were not covered. Thereafter, on April 25, 1969, Dr. Entine wrote to the Carrier explaining the nature of his services and requested a review of the claim on behalf

---

3. The Fair Hearing procedures are set forth at 20 CFR § 405.801 et seq.

of Mrs. Bohlen.[4] She also requested a review of her claim by letter of July 28, 1969. An informal review was conducted by the Carrier, and on August 29, 1969, Mrs. Bohlen and Dr. Entine were advised that her claim was denied because, although the services were not routine or normal dental care, it was for dental services, an excluded service. The Carrier further stated that the Social Security Administration regulations permitted payment for dental splinting and related procedures only when they were an integral part of the fracture and performed by the dentist who had reduced the fracture. The August 29 letter also advised Mrs. Bohlen of her right to appeal for a Fair Hearing.

Following notification of this denial, Dr. Entine responded by letter to the Carrier, strenuously objecting. He stated that he was advising Mrs. Bohlen to appeal because: (1) he felt that it was inconsistent to allow reimbursement for the work if the oral surgeon had performed it but deny reimbursement for the same work merely because it was performed by a different dentist; (2) he felt that the work that he had performed was beyond the expertise of the oral surgeon; (3) his work was a direct result of the accident; and (4) "this is not 'dental work or dental care' but is 'jaw work and jaw care' and may lead to further complications because of her inability to chew properly without his restorative work." An appeal was requested on September 11, 1969, and held on January 21, 1970, in Philadelphia. In denying Mrs. Bohlen's claim, the Fair Hearing Officer stated:

"It is hereby determined that the Carrier was correct in having rejected coverage for the services performed by Doctor Entine. The services had been dental care, and he had not performed the surgery. Additionally, he had not reduced the fracture of the Enrollee's jaw.

4. At the time of the Fair Hearing, Dr. Entine had been paid by Mrs. Bohlen for his services. He was, however, assisting

This conclusion is substantiated by Section 1862(a) (12) [42 U.S.C. § 1395y(a) (12)] . . . which excludes from coverage any expenses incurred 'for services in connection with the care, treatment, filling, removal, or replacement of teeth or structures directly supporting teeth.' In accord is Section 405.310(i) of Subpart C of the Social Security Administration's Regulations No. 5, as revised, (Federal Health Insurance for the Aged—20 C.F.R. 405), published in the Federal Register October 20, 1966. Also in agreement is the first paragraph of Section 6111, as revised, of the Part B Intermediary Manual, as revised and cited heretofore.

Further substantiation can be found in Section 6132, as revised, of the Part B Intermediary Manual, as revised and cited heretofore, which states:

'6132. DENTAL SERVICES EXCLUSION

Items and services in connection with the care, treatment, filling, removal, or replacement of teeth, or structures directly supporting the teeth are not covered.'

It is clear that the services that Doctor Entine had provided had been excluded services since the 'primary procedure involved' had been strictly dental services. There might have been coverage had Doctor Mears [the surgeon] provided the services in contention. This conclusion finds substance in Section 6111, as revised, of the Part B Intermediary Manual, as revised and cited heretofore, which states:

'If an otherwise noncovered procedure or service is performed by a dentist as an incident to and as an integral part of a covered procedure or service *performed by him,* the total service performed by the dentist on such an occasion is covered.'

Mrs. Bohlen in seeking reimbursement of her expenses.

Therefore, the Carrier cannot make payment (reimbursement) for Doctor Entine's professional services, as requested by the Enrollee."

Subsequently, the plaintiff was advised by letter from the Social Security Administration that the Social Security Act makes no provision for the appeal of a part B Medicare claim from a hearing officer's determination.

### III.

■ The dichotomy between entitlement and amount has its origin in the statute, 42 U.S.C. § 1395ff:

"(a) The determination of whether an individual is entitled to benefits under part A or part B, and the determination of the amount of benefits under part A, shall be made by the Secretary in accordance with regulations prescribed by him.

(b) *Any individual dissatisfied with any determination under subsection (a) of this section as to entitlement under part A or part B, or as to amount of benefits under part A where the matter in controversy is $100 or more, shall be entitled to a hearing thereon by the Secretary* to the same extent as is provided in section 405(b) of this title, and, *in the case of a determination as to entitlement or as to amount of benefits where the amount in controversy is $1000 or more, to judicial review of the Secretary's final decision* after such hearing as is provided in section 405(g) of this title." (Emphasis added.)

It is clear from this section that claimants raising questions of entitlement are protected by procedures for review in the administrative and judicial processes; those with disputes involving amount under part B are not.

This failure to grant review is explained to some extent in the legislative history:

"The committee's bill provides for the Secretary to make determinations, under both the hospital insurance plan and the supplementary plan, as to whether individuals are entitled to hospital insurance benefits or supplementary medical insurance benefits and for hearings by the Secretary and judicial review where an individual is dissatisfied with the Secretary's determination. Hearings and judicial review are also provided for where an individual is dissatisfied with a determination as to the amount of benefits under the hospital insurance plan if the amount in controversy is $1,000 or more. *(Under the supplementary plan, carriers, not the Secretary, would review beneficiary complaints regarding the amount of benefits, and the bill does not provide for judicial review of a determination concerning the amount of benefits under part B where claims will probably be for substantially smaller amounts than under part A.)* Hospitals, extended care facilities, and home health agencies would be entitled to hearing and judicial review if they are dissatisfied with the Secretary's determination regarding their eligibility to participate in the program. It is intended that the remedies provided by these review procedures shall be exclusive." (Emphasis added.) 1965 U.S.Code Cong. and Admin.News, Vol. 2, p. 1995.

However, insofar as we can, by our research, ascertain the legislative history does not indicate what Congress meant by "entitlement."

It is our view that a question of entitlement is one which raises the issue of whether, regardless of the question of amount of benefits in question, the claimant has the right to receive any payment for the services rendered, or, conversely, whether the claim is to be excluded entirely. It seems to us that, against this definitional background, Mrs. Bohlen's claim raises an issue of entitlement, for the Hearing Officer, despite her colorable case for inclusion, has held that her claim is totally excluded and not to be paid regardless of the amount of same. But we do not and cannot stop with this initial analysis, for

the problem must be explored in greater depth. First of all, it is helpful, in evaluating the nature of the question before us, to look to the reasons for allowing review in entitlement matters but not in those involving amount.

■ The above quoted passage from the legislative history makes it clear that Congress did not want to overburden HEW and the courts with the small claims that would likely occur in connection with amount questions under part B.[5] We also perceive other reasons for limiting review of amount questions. It would appear that most questions of amount would be limited to questions of fact that are within the competence of a carrier to find and decide. For example, § 1395l (entitled "Payment of benefits—Amounts") requires that an enrollee be reimbursed 80% of the reasonable charges for services described in § 1395k(a) (1) (payment for medical and other health services). Section 1395u(a) (1) (A) encourages the Secretary to enter into contracts with carriers and allows the carrier to "make determinations of the rates and amounts of payments required . . . on a reasonable cost or reasonable charge basis." § 1395u(b) (3) further states:

"(3) Each such contract shall provide that the carrier—

(B) will take such action as may be necessary to assure that, where payment . . . is on a charge basis, such charge will be reasonable

. . .

\* \* \* \* \*

. . . In determining the reasonable charge . . . there shall be taken into consideration the customary charges for similar services generally made by the physician . . . as well as the prevailing charges in the locality for similar services."

Thus, Congress has expressed confidence that carriers are competent to determine such factual questions as the amounts of

payments required and the reasonableness of the charges, and conversely, has expressed a judgment that administrative and judicial review, except in large claims, is unnecessary to protect the integrity of the system and the rights of claimants.

Entitlement questions, on the other hand, are essentially different in character. These questions tend to be questions of policy which are broader than a given case. They are more fundamental than amount questions and usually involve legal analysis or statutory construction, or questions of mixed fact and law, questions on which the Secretary or the courts, as opposed to a carrier staffed by laymen, should have the last word. Moreover, entitlement questions cut across the spectrum of amounts, in terms of artificial boundaries ($100, $1,000, etc.) and otherwise. We believe that it is for these reasons that Congress has required that the entitlement questions be reviewable by the Secretary and by the courts. 42 U.S.C. § 1395ff(a).

■ The basis on which the Carrier denied Mrs. Bohlen's claim was that it fell within the exclusion of services or items from coverage, i. e., the dental exclusions of § 1395y(a) (12), as defined and limited by the Social Security Administration in 20 CFR § 405.310(i) and part B Intermediary Manual §§ 6111 and 6132. An exclusion requires interpretation, and the statute here to be interpreted is enormously involved. Mrs. Bohlen's claim for inclusion raises intricate questions of interpretation of the statute and the regulations. It seems to us that, in such instance, there should be review available from the Carrier's ruling so as to obtain the benefit of the appropriate expertise and to insure proper statutory construction and uniform application of the Congressional intent. Furthermore, as noted, Mrs. Bohlen's claim is more fundamental than merely a question of amount; the Carrier has

5. We note, however, that Congress could have obviated this problem by placing a dollar limitation on appealable amount questions under part B as it did for part A amount questions.

denied her any reimbursement for Dr. Entine's services. Certainly the impact of a total exclusion from coverage is far greater than merely a dispute about the reasonableness of a doctor's bill. Nor is there any indication that complex questions concerning the dental exclusion "will probably be for substantially smaller amounts than under part A," U.S. Code Cong. and Admin.News, *supra,* which is Congress's reason for denying review of amount questions.[6] In our view, then, Mrs. Bohlen's claim must be construed as one for which Congress has granted review—namely, entitlement.

Another justification for classifying Mrs. Bohlen's claim as one of entitlement is found by contrasting language in the statute itself. In § 1395*o,* Congress sets forth the eligibility requirements, stating that if an individual meets the criteria of age, residency, etc., he is *eligible* to enroll for part B benefits. However, if an individual has enrolled under part B, § 1395k(a) states that "[t]he benefits . . . shall consist of—(1) *entitlement* to have payment made . . . for medical and other health services . . . ." (Emphasis added.) Thus Congress has stated that if the requirements are met, an individual is eligible for enrollment and once enrolled is *entitled* to payment for "medical and other health benefits." This analysis militates against the government's contention that "entitlement"

really means "eligibility" and that it is only where the claimant's eligibility for benefits is in question (i. e., having attained the requisite age, residency, citizenship, etc.) [7] that administrative and judicial review will lie.[8] Therefore, Mrs. Bohlen's claim that she is *entitled* to reimbursement for "medical and other health services" as limited by the language of § 1395x(r), unless reimbursement is precluded by the exclusion of § 1395y(a) (12), would appear to be one of entitlement under § 1395k(a) (1) of the Act.

The foregoing analysis comprises our distillation from the statute of the guidelines for the solution of the problem before us. It might be argued, from the relative silence of the Act and the legislative history on the point, that, at best, the Congressional intent is not clear. If that be the case (and we do not think that it is), at least no clear Congressional intent has been expressed in a vein contra our reasoning. In such a situation, it is appropriate for courts to look to settled rules of statutory construction. That approach also supports our conclusion.

 The basic rule with respect to construction of the Medicare Act is that it should be construed liberally. Carey v. Finch, 316 F.Supp. 1263 (E.D.Pa. 1970); Reading v. Richardson, 339 F. Supp. 295 (E.D.Miss.1972). Moreover, there is a presumption of reviewability

6. The claim in question here is based on Dr. Entine's services performed as of the date of filing the claim with the Carrier. Dr. Entine has indicated that there is much more work to be done on Mrs. Bohlen so that the total bill will be substantially higher. At the time of filing the complaint, she had spent $400; by June 1971, she had spent $600; Dr. Entine estimates that Mrs. Bohlen will spend more than $1,000 for his services.

7. 42 U.S.C. § 1395*o* provides:
"Every individual who—
(1) has attained the age of 65, and
(2) (A) is a resident of the United States, and is either (i) a citizen or (ii) an alien lawfully admitted for permanent residence who has resided in the United States continuously dur-

ing the 5 years immediately preceding the month in which he applies for enrollment under this part, or (B) is entitled to hospital insurance benefits under part A,
is eligible to enroll in the insurance program established by this part."

8. The closest approximation of the Secretary's definition of "entitlement" that we can find is 20 C.F.R. § 405.202, which begins:
"To become entitled to supplementary medical insurance benefits, an individual must meet the requirements for enrollment . . . and must enroll . . . ."
However, to the extent that this regulation is inconsistent with the statute, it is, of course, invalid.

operating in favor of Medicare claimants. Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); Aquavella v. Richardson, 437 F.2d 397 (2d Cir. 1971).

Finally, while there is a paucity of caselaw in this area, we feel that Cardno v. Finch, 311 F.Supp. 251 (E.D.La. 1970), comports with our views as to "entitlement." In Cardno, the plaintiff had undergone a kidney operation at a hospital not participating in the Medicare program. A final decision of the Secretary of HEW had denied her reimbursement under part A because she had not received "emergency" services within the meaning of 42 U.S.C. § 1395f(d) (1). The plaintiff filed suit in District Court for judicial review of the Secretary's denial and the Government moved to dismiss for want of jurisdiction. In construing § 1395ff, the court denied the motion to dismiss and stated that "Mrs. Cardno is not seeking judicial review of the amount of benefits she should receive. The sole question presented is whether she is entitled to the benefit of the Act." Cardno v. Finch, supra at 255.[9]

Thus, the issue in Cardno, i. e., does the question of whether services rendered by a non-participating hospital were emergency services [10] (those being the only services performed by a non-participating hospital for which an individual may receive reimbursement under part A) raise an issue of entitlement for which there is judicial review, finds a parallel in this case. Both Cardno and Bohlen have raised questions of the basic meaning of inclusionary and exclusionary sections of the Act. See also Sowell v. Richardson, 319 F.Supp. 689 (D.S.C.1970). We conclude, as did the Cardno court, that what is presented is a question of entitlement which creates the right of review.[11]

## IV.

We have held that Mrs. Bohlen has a right to administrative and subsequent judicial review of the Carrier's determination. However, 42 U.S.C. § 1395ff(b)

9. In Kuenstler v. Occidental Life Insurance Co., 292 F.Supp. 532 (C.D.Cal. 1968), the plaintiff brought suit to recover $72 allegedly paid by him for medical services which were disallowed by the defendant as the carrier for the administration of part B. In holding that there is no right to judicial review of amount of benefits under part B, the court stated:

"This section [42 U.S.C. § 1395ff] clearly limits the right to judicial review to claims of $1,000 or more. However, in addition to this requirement as to amount, judicial review is possible only where the Secretary of Health, Education and Welfare has reached a final decision, and claims as to amount of benefits under part B are excluded from review by the Secretary no matter what the amounts." Id. at 536.

However, Kuenstler explains neither the nature of the defendant's disallowance of costs nor its reasons for assuming that the suit involved a question of amount of benefits instead of entitlement. Like Kuenstler, there are other cases deciding the right to judicial review under the Medicare Amendments, see, e. g., Schroeder Nursing Care, Inc. v. Mutual of Omaha Insurance Co., 311 F.Supp. 405 (E.D.Wis.1970); Aquavella v. Richardson, 437 F.2d 397. (2d Cir. 1971), but Cardno is the only case that we have been able to find which discusses the difference between "amount" and "entitlement."

10. See, 42 U.S.C. § 1395f(d) (1).

11. By virtue of 20 C.F.R. § 405.803(c), the Carrier may not consider questions of entitlement. The Secretary may, however, seek to amend that section to permit the Carrier or Fair Hearing Examiner, before whom testimony may be taken, to develop a record on questions of entitlement like the one presented in this case. Cf. 42 U.S.C. § 1395u(b) (3) (C). We note that, while 42 U.S.C. § 405 (b) (the provision for the hearing before the Secretary) provides for a hearing on the claim, it does not require one. It would appear that many, if not most, claims would be submitted only on the record as it was developed in the Fair Hearing procedures before the Carrier. The development of the record on entitlement questions before the Fair Hearing Examiner would therefore lessen the cost to the claimant and the burden on the Secretary.

only allows judicial review of the Secretary's final decision after the Secretary has afforded the claimant a hearing to which she is entitled under 42 U.S.C. § 405(b). Therefore, it is necessary to dismiss Mrs. Bohlen's complaint (without prejudice) in order that she may pursue her administrative remedies before the Secretary. The Secretary's final decision may then be reviewed by the Court, if desired by either party, after such hearing as is provided in 42 U.S.C. § 405(g). *See* Bumb v. Hospital Service of Southern Calif., 440 F.2d 1077 (9th Cir. 1971).