Emma BOHLEN, Appellee,

v.

Caspar WEINBERGER, Secretary of Health, Education and Welfare, Appellant.

No. 72-1884.

United States Court of Appeals, Third Circuit.

Argued May 25, 1973.

Decided Aug. 15, 1973.

Roland J. Artigues, Galfand, Berger, Senesky, Lurie & March, Philadelphia, Pa., for appellee.

Harlington Wood, Jr., Asst. Atty. Gen., Carl J. Melone, U. S. Atty., Walter H. Fleischer, James C. Hair, Jr., Attys., Department of Justice, Washington, D. C., for appellant.

Before ALDISERT and ADAMS, Circuit Judges and STAPLETON, District Judge.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

The Court is asked on this appeal to determine the narrow issue whether, under the Medicare provisions of the Social Security Act,[1] prior to the 1972 amendment, the denial by a carrier of reimbursement to an individual for dental care is subject to administrative review. The district court held, in an exhaustive opinion,[2] that, under the Medicare Act, an individual denied reimbursement for the kind of dental care involved here may seek review by the Secretary of Health, Education and Welfare. The Secretary disagrees and has filed this appeal.

Plaintiff, Emma Bohlen, was injured in an automobile accident in August, 1968. She suffered two dislocated hips, a fractured right hip, a laceration of the arm, a broken nose and a fractured jaw. While in the hospital, the frac-

---

1. 42 U.S.C. § 1395j et seq. (part B). Although the plaintiff also raised a number of constitutional questions, since we decide that plaintiff is entitled to administrative review of the denial of her claim, we, like the district court, need not reach them. The major issue confronting the Court concerns the proper interpretation to be given 42 U.S.C. § 1395ff, the review provision of the Act. In October, 1972, this section was amended by Congress to obviate the kind of problem presented in this case. See notes 10 & 14, infra. All references in the text to § 1395ff refer to that section as originally enacted, and not as amended, unless otherwise specifically stated.

2. Bohlen v. Richardson, 345 F.Supp. 124 (E.D.Pa.1972).

tured jaw was reduced by an oral surgeon, and the cost of that dental procedure was covered by Medicare.[3] Later, Mrs. Bohlen engaged the services of another dentist for follow-up dental work in the nature of realigning and grinding her teeth to correct the separation of the maxilla (jaw) from the cranium, a condition which had so changed her "bite" that her upper and lower teeth did not meet. As a result of this improper "bite," Mrs. Bohlen was unable to chew and eat adequately and her fracture was not healing correctly. In letters, which are part of the record in this case, the second dental surgeon described the work he had performed on Mrs. Bohlen as "absolutely necessary post-operative treatment" that was "in no way related to normal dental care or maintenance. . . ."

Mrs. Bohlen submitted to Pennsylvania Blue Cross-Blue Shield[4] a Request for Medicare Payment for the services performed by the dental surgeon. The carrier rejected the claim on the ground that the dental services involved were not covered under Medicare. During an informal review, her claim was again denied by the carrier, and subsequently by a Medicare Fair Hearing Officer. Mrs. Bohlen was then advised by the Social Security Administration that no further review could be sought by her since the Social Security Act does not provide for administrative or judicial review from a

determination concerning the type of claim presented by Mrs. Bohlen.

Although this appeal turns solely upon the issue whether the denial of reimbursement is subject to review, it is important to place the problem presented in a perspective appropriately illuminated by the issue upon which review is sought.

Mrs. Bohlen was seeking reimbursement based upon part B of the Medicare Act that provides benefits for "medical and other health services."[5] The Act limits such benefits to "professional services performed by physicians. . . .,"[6] and defines "physician," in part, as "a doctor of dentistry . . . who is legally authorized to practice dentistry . . . but only with respect to (A) surgery related to the jaw or any structure contiguous to the jaw or (B) the reduction of any fracture of the jaw or facial bone. . . ."[7]

The Act excludes from coverage under part B "any expenses incurred for items or services (12) where such expenses are for services in connection with the care, treatment, filling, removal, or replacement of teeth or structures directly supporting teeth."[8] It was on the basis of this exclusion that the carrier and the Fair Hearing Officer determined that Mrs. Bohlen's dental treatment was not covered under Medicare.[9]

---

3. These services were paid for pursuant to 42 U.S.C. §§ 1395k and 1395x(q), (r) and (s).

4. To provide for efficient and convenient administration, Congress authorized the Secretary to enter into contracts with carriers such as Pennsylvania Blue Cross-Blue Shield to perform certain functions. 42 U.S.C. § 1395a. Section 1395u(b)(3)(C) states that such contracts shall provide that the carrier establish and maintain procedures for a fair hearing by the carrier. Such procedures have been established. 20 C.F.R. § 405.801 et seq.

5. 42 U.S.C. § 1395k.

6. Id. §§ 1395x(s), 1395x(q).

7. Id. § 1395x(r)(2).

8. Id. § 1395y(a)(12).

9. The Fair Hearing Officer reasoned, *inter alia*, that because the second dentist did not perform the in-hospital oral surgery reducing the fracture of Mrs. Bohlen's jaw, the services rendered by him fell within the exclusion of § 1395y(a)(12). See note 8 and accompanying text, supra. According to the carrier, the second dental procedure would be covered "only when [it is an] integral part of the reduction of the fracture and [is] performed by the dentist who reduced the fracture." Mrs. Bohlen's legal problem thus arose because she used two dental surgeons instead of one. From the testimony taken by the Fair Hearing Officer, it would appear that the first dentist, an oral surgeon, had advised Mrs. Bohlen to consult another dentist to perform the additional dental work she required.

Whether Mrs. Bohlen does or does not have a statutory right of review under the Medicare Act depends upon an interpretation of § 1395ff of the Act.[10] That section, prior to the 1972 Amendment, see note 14 and accompanying text, *infra*, provides, in relevant part:

> "(a) The determination of whether an individual is entitled to benefits under part A or part B, and the determination of the amount of benefits under part A, shall be made by the Secretary in accordance with regulations prescribed by him.

> "(b) Any individual dissatisfied with any determination under subsection (a) of this section as to entitlement under part A or part B, or as to amount of benefits under part A where the matter in controversy is $100 or more, shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title, and in the case of a determination as to entitlement or as to amount of benefits where the amount in controversy is $1,000 or more, to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title."

Thus, the issue whether Mrs. Bohlen qualifies for a statutory right of review narrows itself to whether the claim she submitted for the second dental procedure raises a question of "entitlement" or one of "amount."

Having carefully considered the record, and the various contentions, we conclude that the district court correctly determined that "a question of entitlement is one which raises the issue of whether regardless of the amount of benefits in question, the claimant has the right to receive any payment for the services rendered, or, conversely, whether the claim is to be excluded entirely." [11]

The district court, meticulously examining the legislative history of § 1395ff, noted the reasons suggested in Congress [12] for allowing review in "entitlement" matters but not in those involving "amount," and articulated several reasons fathomed by the district judge *sua sponte* to support such a distinction.[13] From its analysis, the district court concluded that Mrs. Bohlen's claim for reimbursement raises an issue of "entitlement," not "amount." It would serve little, if any, purpose for this Court to reiterate the cogent bases for the lower court's conclusion concerning Mrs. Bohlen's claim since they are set forth in considerable detail in the trial judge's opinion, 345 F.Supp. 124. Rather, we hold simply that, for the reasons stated by the district judge, Mrs. Bohlen is entitled to review by the Secretary.

While affirming the judgment of the district court, we are not unmindful that

---

10. 42 U.S.C. § 1395ff. This section was amended in October, 1972. 42 U.S.C.A. § 1395ff (Supp.1973). *See* text accompanying note 14, *infra*.

11. 345 F.Supp. at 129.

12. Although the legislative history does not indicate what Congress, when enacting the Medicare Act, meant by "entitlement," it does suggest that Congress did not provide review "of a determination concerning the amount of benefits under part B [because such] claims will probably be for substantially smaller amounts than under part A." 1965 U.S.Code Cong. and Admin.News, Vol. 1, p. 1995. It should be noted that at the time of filing the complaint Mrs. Bohlen's bill for the second dentist's services was $400; by June, 1971, she had spent $600 and, the dentist estimates that Mrs. Bohlen will spend more than $1,000 for his services. Bohlen v. Richardson, 345 F.Supp. 124, 131, n.6 (E.D.Pa.1972).

13. The district court perceived reasons other than the one suggested in Congress for limiting review of "amount" questions but not "entitlement" issues. The former are typically "questions of fact that are within the competence of a carrier to find and decide" while the latter "tend to be questions of policy which are broader. . . . [and] are more fundamental than amount questions and usually involve legal analysis or statutory construction . . . on which the Secretary or the courts, as opposed to a carrier staffed by laymen, should have the last word." 345 F.Supp. at 130. The court concluded that Mrs. Bohlen's claim raised questions of the latter sort.

subsequent to the opinion of the lower court in this case Congress amended the Social Security Act in such a way that those now raising claims such as Mrs. Bohlen's in the present case would apparently not be entitled to administrative review by the Secretary.[14] Thus, under the present version of § 1395ff, it would seem that the concept of "entitlement" relates, as the Secretary has argued throughout this litigation, only to the right of an individual to participate, *vel non*, in the Medicare program, and not to the right of an enrollee to reimbursement.[15]

But cases must be decided on the basis of a statute's language and, where appropriate, resort may be had to legislative history at the time of the relevant enactment's passage. We thus agree with the recent decision by the Court of Appeals for the Fourth Circuit holding that "determinations as to *entitlement* to benefits are properly subject to . . . review . . .," notwithstanding the 1972 Amendment.[16] While subsequent legislative history may shed light upon the intent earlier embodied in a given piece of legislation, the remarks of a single proponent of the amending legislation [17] do not, without more, compel the reversal by us of the district court's well-reasoned judgment. Indeed, one might well argue that the 1972 amendment, and Senator Bennett's remarks in support thereof, indicate that the 1962 legislation does *not* express a restrictive notion of reviewability. Thus, nothing in the 1972 Amendment nor the legislative history accompanying it convinces us that the district court erred in concluding that, under the statute as originally enacted, Mrs. Bohlen raised a claim of "entitlement" and therefore was protected by the Act's review provision.

The judgment of the district court will be affirmed.

ALDISERT, Circuit Judge (dissenting).

Blue Shield is an insurance carrier under contract with the Social Security Administration to administer a portion of the Medicare program. We are to decide whether the denial by Blue Shield of reimbursement to an individual for dental services necessitated by a broken jaw raises (a) a question of "entitlement" for which there is a statutory right of administrative review by the Secretary of Health, Education and Wel-

14. 42 U.S.C.A. § 1395ff (Supp.1973). The government contends, *inter alia*, that the judgment reached by the district court, and by this Court here, would be productive of much litigation. Of course, the courts must always be alert to such possibilities. But, even assuming, *arguendo*, that a court could properly decide appeals on the basis of the volume of litigation that might be produced by a given decision in a particular case, there has been no showing that the result we reach in this case will in fact produce more cases of this kind. There has been no indication, for example, that the decisions in Ridgely v. Secretary of HEW, 475 F.2d 1222 (4th Cir. 1973), see note 14, *infra*, or Cardno v. Finch, 311 F.Supp. 251 (E.D.La. 1970), have in any way confirmed that the possibility of increased litigation is anything more than speculative. Congress could, of course, decide not even to run the risk of overburdening our dockets, but, as the government admitted at oral argument, § 1395ff, prior to the 1972 amendment, was at best ambiguous and, in any event, did not clearly reflect a congressional concern about the docket, or in any way manifest an intent that cases of the present kind be placed in the non-reviewable "amount" category.

15. *See* 118 Cong.Rec.S. 17048–49 (daily ed. Oct. 5, 1972) (remarks of Senator Bennett); H.Rep.No.92–1605, 92d Cong., 2d Sess., p. 61 (Conference Report).

16. Ridgely v. Secretary of H.E.W., 475 F.2d 1222 (4th Cir. 1973). The Ridgely court was faced with a determination that certain nursing care received by the enrollee was "custodial," not "skilled," in nature and thus excluded from Medicare coverage under 42 U.S.C. § 1395y(a)(9). At issue was whether such question was one of "entitlement" or "amount" for purposes of § 1395ff. The court concluded that under the legislation prior to the amendment the case presented an "entitlement" issue subject to review.

17. See Note 15, *supra*. Senator Bennett's statement is set out *in extenso* in Judge Aldisert's dissenting opinion.

fare and thereafter judicial review or, (b) a question of "amount", for which there is no such statutory right of review. Concededly there is ambiguity over the meaning of the word "entitlement" as used in the statute.

The Secretary interprets the word to mean eligibility to participate in the Medicare program, i. e., eligibility for any benefits of Medicare. Thus, if an applicant is denied the coverage of the Medicare provisions of the Social Security Act, he is entitled to an appeal to the Secretary and thence to the federal courts. The interpretation of Mrs. Bohlen, accepted by the district court and the majority, and by the Fourth Circuit in Ridgeley v. Secretary of HEW, 475 F.2d 1222 (4th Cir., 1973), is that the word means eligibility not only to participate in the Medicare program, but eligibility for a certain benefit; and that therefore, when the applicant is denied a certain requested Medicare benefit, he has a right to exhaustive administrative and judicial review.

To solve this issue we must wade into the morass of statutory construction; and I am the first to concede that a reasonable case can be made for the majority. In approaching this question, I am reminded of a favorite expression of one of the departed brothers of this court, The Honorable Abraham L. Freedman, who was fond of saying, "The way you come out on this question depends on the way you go in." This was a cryptic method of expressing modern notions of public policy or social welfare, sometimes called Cardozo's "sociological method," sometimes called "result-orientation." I do not use the notion "result-orientation" in a pejorative sense, but merely as some consideration of the relative desirability of the result of one decision or another. Cardozo referred to this type of decision making as "along the lines of justice, morals and social welfare, the *mores* of the day; and this I will call the method of sociology." [1] "Result-orientation," according to Judge Henry Friendly, must "refer to a judge's personal belief in what is desirable, formed before study of the case at hand and resistance to contrary arguments . . . [t]he way to handle this kind of 'result-orientation' is to require that a judge keep his personal beliefs as to desirability in their appropriate subordinate place in the judicial process—not to insist on his pretending to an intellectual equilibrium on great policy matters that cannot be expected, nor in many instances, desired." [2]

In this case, it is relatively easy to resolve the ambiguity in favor of the individual applicant who has claimed a wrong under the Medicare program. There is a strong feeling abroad in this land that there should be review upon review upon review of all decisions, especially those associated with the government. To reach this result one simply takes a broad view of the word "entitlement" in the following provision of 42 U.S.C. § 1395ff(b): "Any individual dissatisfied with any determination under subsection (a) of this section as to entitlement under Part A or Part B, or as to the amount of benefits under Part A . . . . ."

The majority's interpretation is a warmhearted, generous gesture that comports with the modern concept of unlimited judicial review of virtually every aspect of contemporary American life. Thus, as here, when an applicant for Medicare has a difficulty with her Blue Shield claim she is then entitled to the following: (1) a right to exhaust the entire Blue Shield administrative procedure; (2) if dissatisfied, she then may institute and prosecute an administrative process through the various levels in the Department of Health, Education and Welfare; (3) if dissatisfied, she may file an action in the district court; (4) if dissatisfied there, to the United States Court of Appeals; and (5) if dis-

---

1. Cardozo, The Nature of the Judicial Process, 31.

2. Friendly, Reactions of a Lawyer-Newly Become Judge, 71 Yale L.J. 218, 231 (1961).

satisfied here, to the United States Supreme Court. All this because of a dispute over a Medicare dental bill.

I do not agree. And rather than become involved in an exercise of semantics or the juxtaposition of phrases, I choose another route. I acknowledge Judge Friendly's description of the task of statutory construction as "excruciating in its demand for judicial objectivity." [3] Perhaps, the best advice is that offered by Judge Learned Hand —the judge "must try as best he can to put into concrete form what . . . [the common] will is, not by slavishly following the words, but by trying honestly to say that was the underlying purpose expressed." [4]

First, I am impressed by the interpretation of this statute by the Secretary of Health, Education and Welfare. The expertise of his department is entitled to some, if not considerable, weight; and here I am willing to accept their view. The Secretary has interpreted the statute to mean that "entitlement" relates only to an individual's right to participate in the Medicare program. Mrs. Bohlen was not denied the right to participate in the program. She was simply denied the dental services she claimed. The Secretary contends, "It is apparent from the language of the Medicare provision that Congress intended that the Secretary delegate to carriers the day-to-day administration of the Supplementary Medical Insurance Program. Specifically, the Secretary is directed to arrange for carriers to perform the functions of payor, auditor, regulator, innovator of efficient utilization procedures, and communicator of program ideas (42 U.S.C. 1395u(a)). In addition, pursuant to contracts with the Secretary, carriers are to 'otherwise assist, in such manner as the contract may provide, in discharging administrative duties necessary to carry out the purposes of' the program (42 U.S.C. 1395u(a)(4)), and to

\* \* \* establish and maintain procedures pursuant to which an individual enrolled under this part will be granted an opportunity for a fair hearing by the carrier when requests for payment under this part with respect to services furnished him are denied or are not acted upon with reasonable promptness or when the amount of such payment is in controversy \* \* \*.

(42 U.S.C. 1395u(b)(3)(C)."

Conforming with the statutory language, the Secretary by contract and regulation has required carriers to make a determination as to what items and services furnished are covered, but the Secretary has precluded carriers from determining "whether an individual is entitled to coverage under the Supplementary Medical Insurance Plan" because this is a "factor for which the Social Security Administration has sole responsibility." 20 C.F.R. 405.803(c). And this is the aspect of the Medicare program which the Secretary deems subject to administrative and judicial review. The Secretary presents a sound argument and no semantic excursions in other directions can convince me otherwise.

Secondly, I am aware that as a general proposition one session of Congress cannot, by subsequent statutory declaration, legislate the intention of a previous Congress. Nevertheless I am impressed that the statutory provision at issue is relatively new legislation adopted in 1965 and that seven years later Congress acted to remove the ambiguity. The Congressional amendment provided:

(b)(1) Any individual dissatisfied with any determination under subsection (a) as to—

(A) Whether he meets the conditions of § 226 of this act or § 103 of the Social Security amendments of 1965, or

---

3. Friendly, *supra*, at 232.

4. Hand, The Spirit of Liberty, 84 (1952).

(B) Whether he is eligible to enroll or has enrolled pursuant to the provisions of Part B of this title . . . ,

shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in § 205(b) and to judicial review of the Secretary's final decision after such hearing as is provided in § 205(g). § 2990 Social Security Amendments of 1972 (Pub.L. 92–603 October 30, 1972).

In the Senate debates on H.R. 1, the bill encompassing the 1972 amendment, Senator Bennett stated: "[T]he purpose of the amendment is to make sure existing law, which gives the right of a person to go to court on the question of eligibility to receive welfare [i. e., Medicare benefits], is not interpreted to mean he can take the question of the federal claim to court. If he did we would never have an end to it. *This is to reconfirm the original intention of the law that the courts can determine only eligibility.*

"The situations in which Medicare decisions are appealable to the courts were intended in the original law to be greatly restricted in order to avoid overloading the courts with minor matters. *The law refers to 'entitlement' as being an issue subject to court review and the word was intended to mean eligibility to any benefits of Medicare but not to decisions on the claim for payment for a given service.*" [5] (Emphasis supplied.) At the risk of repetition, I am aware that Congressional interpretation of previous legislation is not binding. Although not binding, I believe that it is a legitimate consideration in judical statutory interpretation.

My third reason is my own application of Cardozo's "method of sociology," otherwise stated as "public policy." I am persuaded that the federal courts of 1973 are overloaded with cases which do not properly belong here. Recently this court had before us an action for civil damages for $3.00, brought by a prisoner against a guard for an alleged theft of seven packs of cigarettes, Russell v.

Bodner, (unreported) (3d Cir. 1973). There are certain aspects of public disputes which should come within the doctrine of "de minimis," especially where, as here, there is a procedure instituted within the Blue Shield carrier to process disputes. I do not believe that the district court should become the arbiter for determining the propriety of disputes over dental bills between an applicant and Blue Shield in the administration of the Medicare program. Similarly I do not believe that this court of appeals, which increased its caseload over 100% in a five-year period, nor the Supreme Court, already choked with an astronomical caseload, should become involved in this type of litigation. The majority recognize this, but seem to complain: "We know this but Congress made us do it." I disagree. The majority should properly say, "The statute is ambiguous, but we are interpreting it in such a way as to mean that Congress made us do it."

I would reverse the judgment of the district court and dismiss the complaint for want of jurisdiction in the federal courts.

---

5.   118 Cong.Rec. S 17048,49 (daily ed. October 5, 1972).